**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| SCOTT HINTZ, | : | MOTION TO VACATE |
|     Movant, | : | 28 U.S.C. § 2255 |
| | : | |
|     v. | : | CRIMINAL NO. |
| | : | 1:03-CR-131-CC-CCH |
| UNITED STATES OF | : | |
| AMERICA, | : | CIVIL ACTION NO. |
|     Respondent. | : | 1:08-CV-758-CC-CCH |

## MAGISTRATE JUDGE'S ORDER AND FINAL REPORT AND RECOMMENDATION

Movant Scott Hintz filed the instant motion to vacate pursuant to 28 U.S.C. § 2255 on March 4, 2008, in which he seeks to challenge the constitutionality of his conviction and sentence imposed on September 24, 2003, following a guilty plea entered in the Northern District of Georgia. (Doc. 253). On July 20, 2011, the Honorable Clarence Cooper referred the motion to the undersigned for an evidentiary hearing and report and recommendation. (Doc. 446). Pursuant to that referral, on July 22, 2011, the undersigned appointed counsel for Movant and ordered that an evidentiary hearing be held. (Docs. 457, 462-63). On August 30, 2011, an evidentiary hearing was conducted and Movant testified. (Doc. 502). Following the evidentiary hearing, counsel for Movant and the Government filed briefs addressing the issues on referral. (Docs. 504, 515). For the reasons that

follow, the undersigned hereby **RECOMMENDS** that the instant motion to vacate sentence (Doc. 253) be **DENIED**.

I.    Procedural History

On March 6, 2003, the Government filed an Information against Movant for one count of bank fraud against several banks in violation of 18 U.S.C. § 1344. (Doc. 1).  At his initial appearance hearing before the undersigned on that same date, Movant waived his right to indictment and indicated that he wished to enter a guilty plea.  (Docs. 3, 254 at 3-5; Gov. Ex. No. G-1).  After the undersigned accepted the waiver of indictment form, the case was assigned to Judge Cooper for a plea.  (Doc. 254 at 4).  On March 12, 2003, Judge Cooper accepted Movant's negotiated guilty plea to the Information.  (Docs. 7, 8).  The Plea Agreement contains the following waiver of Movant's appellate and collateral rights ("appellate waiver"):

> 16.    LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal his sentence and the right to collaterally attack his sentence in any post-conviction proceeding on any ground, except that the defendant may file a direct appeal of an upward departure from the otherwise applicable sentencing guideline range.   The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals

2

the sentence imposed, the defendant may also file a direct appeal of his sentence.

(Doc. 8, ¶ 16).

On September 24, 2003, Movant was sentenced to fifty-seven months of imprisonment to be followed by five years of supervised release, and restitution in the amount of $2,573,686.03, to be divided amongst the banks named in the Information. (Docs. 15, 17).

Movant filed a *pro se* notice of appeal of his conviction and sentence on January 26, 2004, along with a motion for appointment of appellate counsel. (Docs. 22-23). Judge Cooper referred the case to a magistrate judge for appointment of appellate counsel and, on June 23, 2004, Magistrate Judge Alan J. Baverman appointed Lynn Fant as appellate counsel. (Docs. 30, 33). On July 25, 2004, Movant sought to have Ms. Fant removed from representing him on appeal, and the next day Ms. Fant moved to withdraw as counsel. (Doc. 259, Attach. 1, at 13-18, 20-21). The Eleventh Circuit denied both motions. (*Id.* at 21). On September 28, 2004, Ms. Fant filed a brief and accompanying motion to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967).[1] On January 14,

---

[1] In *Anders*, the Supreme Court held that if counsel determines that an appeal would be wholly frivolous, counsel should notify the appellate court and request

2005, the Eleventh Circuit found that there were no arguable issues of merit, granted Ms. Fant's motion to withdraw as counsel, and affirmed Movant's conviction and sentence. (Doc. 259, Attach. 1, at 23).

Movant then filed a petition for certiorari with the United States Supreme Court on July 1, 2005. (Doc. 259, Attach. 1, at 7). On October 11, 2005, the Supreme Court vacated the Eleventh Circuit's judgment and remanded the case back to the Eleventh Circuit to review Movant's case in light of *United States v. Booker*, 543 U.S. 220 (2005).[2] On July 18, 2006, the Eleventh Circuit issued a ruling on the *Booker* issue remanded by the Supreme Court and dismissed the appeal because: (1) the valid appeal waiver contained in Movant's plea agreement

_____

to withdraw. *Anders*, 386 U.S. at 744.

[2] In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Following *Apprendi*, the Supreme Court in *Blakely v. Washington*, 542 U.S. 296 (2004), defined "statutory maximum" for *Apprendi* purposes as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*" or the maximum a judge may impose without any additional factual findings. *Blakely*, 542 U.S. at 303-04 (emphasis in original). In *Booker*, the Supreme Court found that the mandatory nature of the Sentencing Guidelines were incompatible with the holdings in *Apprendi* and *Blakely*. *Booker*, 543 U.S. at 245.

4

barred review of the *Booker* claim; and (2) in any event, Movant had failed to

demonstrate any *Booker* error.  (Doc. 259, Attach. 1, at 24-30).[3]

Movant filed the instant motion to vacate his sentence on March 4, 2008,

which raised the following claims:

(1)     Movant received ineffective assistance of trial and appellate counsel
        because:

        (a)     both trial and appellate counsel had conflicts of interest;

        (b)     both trial and appellate counsel refused to correct "factual
                inaccuracies and defenses;" and

        (c)     appellate counsel filed an *Anders* brief;

(2)     Movant did not receive his Fifth and Sixth Amendment rights to due
        process, grand jury indictment, and notice for offenses not charged,
        and the Government did not prove jurisdictionally required elements
        with regard to the uncharged offenses; and

(3)     Movant's rights under *Booker* were violated because Movant was
        sentenced under the mandatory sentencing guidelines for uncharged
        facts and substantive offenses not admitted.

(Doc. 253).  Movant's main contention (enumerated as Ground 1a above) is that

there was a vast conspiracy between Mark Kadish (his trial counsel) Lynn Fant (his

---

[3] The Court notes that from the time of the remand until the Eleventh Circuit's decision, three different attorneys were appointed for Movant and subsequently withdrew.  (*See* Docs. 60, 79, 87).

AO 72A
(Rev.8/82)

appellate counsel), Judge Cooper, Judge Baverman, Elida Baverman (Judge Baverman's wife), Paul Morochnik (Movant's real estate attorney and Judge Baverman's relative by marriage), and possibly others, essentially to coerce Movant into entering a guilty plea. As discussed more thoroughly below, the undersigned finds that Movant has not provided any proof that such a conspiracy existed outside of his own imagination.

II.    Standard of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

AO 72A
(Rev.8/82)

"To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

III. Discussion

    A. Evidence Before the Court

        1. Movant's Testimony and Affidavits Submitted by Movant

During the August 30, 2011, evidentiary hearing, Movant wove an incredible tale of a vast conspiracy between Morochnik, Kadish, Judge Cooper, Judge Baverman, Elida Baverman, and Lynn Fant to protect themselves and silence Movant from revealing their criminal activity. Movant testified that:

> These highly respected individuals wanted to "put a lid" on the FBI investigation into Movant's own criminal actions because they were afraid that, if the investigation continued, the FBI would learn of "their participation" in unspecified fraudulent real estate transactions. (Doc. 502, at 16-17, 24-25, 28-36, 41, 42-43, 45, 49-50, 53-55, 63, 68, 100).
>
> In furtherance of the conspiracy, Morochnik and Judge Baverman "directed" Movant to hire Mark Kadish, and Movant was in fear for his life because the three of them alluded to their "connections with organized crime" and

AO 72A
(Rev.8/82)

threatened to kill Movant and his children. (*Id.* at 28-29, 37-38, 41-43, 48-50, 58, 60, 64, 66-67, 81-82, 108-09).

To that end, Judge Baverman and Paul Morochnik told Movant that he "had to" transfer several real and personal properties worth a total of $1,000,000.00 to the Morochnik and Baverman families in order to "keep a lid" on "this," and Movant received no money whatsoever for the transfers. (*Id.* at 36, 48-49).

In addition, as part of the conspiracy Movant was told to plead guilty and he did so because of his fear of Judge Cooper and his attorney, Mark Kadish, and because of the threats to himself and his family made by Judge Baverman, Paul Morochnik, and Mark Kadish. (*Id.* at 40-50, 63-66).

Also in furtherance of the conspiracy, Judge Baverman appointed Lynn Fant to represent Movant on appeal, who filed an *Anders* brief in order to protect all of the other co-conspirators even though Ms. Fant knew that there were appealable issues. (*Id.* at 84-86).

Movant was afraid of Judge Cooper because Judge Cooper and Mark Kadish were such close friends. (*Id.* at 60-64, 71-72).

Judge Cooper was also involved in the conspiracy and the threats that forced him to plead guilty. (*Id.* at 100, 103, 105, 109-110).

Movant did not ever read the entire plea agreement before he signed it, and he did not understand the terms of the agreement. (*Id.* at 55-56, 74-75).

Movant believed he was only pleading to a single count of bank fraud in connection with one bank. (*Id.* at 74-75).

8

He believed, based on Kadish's representations, that he would receive a sentence between zero and six years of imprisonment – but that most likely he would serve no time because of his cooperation. (*Id.* at 56, 70).

Finally, although the terms of the plea included an agreement for Movant to cooperate with the Government with regard to others involved in his fraudulent activities, Movant testified that he understood that term to mean cooperation against everyone except Morochnik, Kadish, and Judge Baverman. (*Id.* at 56-57). In sum, Movant claims that the only reason he entered into his guilty plea was as a result of these threats against Movant and his family, in addition to his purported misunderstanding of the terms of the plea and sentence.

In connection with his claims and in support of his motion, Movant submitted several affidavits that he contends further demonstrate his conspiracy theory. (*See* Docs. 258, 260, 263, 519). In her affidavit, Movant's ex-wife avers that she witnessed conversations between Movant and Paul Morochnik and that it was evident to her that Movant "was scared and intimidated" by Morochnik. (Doc. 260, at 24, ¶ 1). Joseph Jensen attests that he was present during several of Movant's conversations with Mark Kadish and it was clear from these conversations that Movant "was very afraid of Mark Kadish and worried someone

AO 72A
(Rev.8/82)

would harm [Movant's] kids if he did not follow Mark Kadish's direction." (Doc.

260, at 25, ¶ 3). Stephen Weizenecker states that in 2002, Movant told

Weizenecker that Movant was intimidated by Mark Kadish. (Doc. 258, at 39, ¶ 2).

Linda West attests as to similar conversations between Movant and Mark Kadish.

(*Id.* at 26). Sherman Cottrell swears by affidavit that prior to Movant's sentencing

hearing, he witnessed Mark Kadish and Judge Cooper speaking off the record

about their personal interactions outside of court, and that he witnessed Mark

Kadish try to convince Judge Cooper that although Judge Baverman and his family

were involved in receiving $1,000,000.00 worth of property from Movant, Kadish

had nothing to do with that transfer of property. (*Id.* at 27; Doc. 519, ¶ 4).[4] All of

the other evidence in the case, however, overwhelmingly refutes Movant's claims.

In addition, his testimony during the evidentiary hearing was not credible and is

not entitled to any weight.[5]

---

[4] With the exception of Movant's ex-wife and Stephen Weizenecker, it is not clear who any of the other affiants are or how they are affiliated with Movant.

[5] On the same day that the undersigned held the hearing in this matter, Judge Cooper heard Movant on a motion to recuse his counsel and similarly concluded that Movant was not credible. (Doc. 512, at 183).

10

## 2. Other Evidence In the Record

According to the affidavit of Magistrate Judge Alan J. Baverman, in late 2000 when Judge Baverman was still in private practice, Paul Morochnik – married to Judge Baverman's wife's niece – asked Elida Baverman if she could ask Judge Baverman for names of criminal defense lawyers who were capable of representing Morochnik's client who was under federal investigation for mortgage fraud. (Doc. 259, Attach. 13, at ¶ 2). Judge Baverman provided his wife with the names of three different respected criminal defense attorneys, none of whom included Mark Kadish. (*Id.* at ¶ 3). Judge Baverman did not volunteer Mark Kadish as a possible option because Judge Baverman knew that Kadish had a heart condition and may not have been accepting new clients. (*Id.* at ¶ 4). Judge Baverman does not personally know Movant, and never had any conversations with any lawyers – including Mark Kadish – about representing Movant, the legal positions they should take, or information they should or should not disclose to anyone. (*Id.* at ¶ 4). Judge Baverman has never met Movant; told Movant that he had to use Mark Kadish to represent him; done anything to force or coerce Movant into using Mark Kadish; selected Kadish as Movant's lawyer; or caused or directed any other person to select Kadish as Movant's lawyer. (*Id.* at ¶ 8).

11

FBI Special Agent Susan Elizabeth McDavitt avers that she was involved in the original investigation of Movant's mortgage fraud. (Doc. 259, Attach. 13, at ¶ 2). During the course of her investigation, S.A. McDavitt had numerous contacts with Movant, including several interviews and telephone conversations. (*Id.*). At no time during any of these interviews did Movant ever mention Paul Morochnik or Judge Baverman, their involvement in the mortgage fraud scheme, or their involvement in any other criminal activity. (*Id.*).

Mark Kadish attests that from the very beginning of his representation of Movant, Movant always maintained that he was guilty and that he wanted to enter a guilty plea – at times through tears. (Doc. 259, Attach. 12, ¶ 2). Kadish was present at Movant's first interview with the FBI when Movant admitted his guilt to the FBI agents. (*Id.* at ¶ 3). Movant continued to maintain his guilt at his initial appearance before the undersigned a few years later on March 6, 2003, when Movant indicated to the Court that he wished to enter a guilty plea and waived his right to indictment. (Doc. 254 at 3-5). It was because Movant indicated that he wished to enter a plea that his case was assigned to Judge Cooper – as the next

12

district judge in the criminal plea rotation – for that purpose. (*Id.* at 4).[6] Mark Kadish subsequently discussed the entire plea agreement with Movant in detail, including Attachment A, after Movant was provided a copy of the agreement with Attachment A included.[7] (Doc. 259, Attach. 12, ¶¶ 9, 10).

Six days later, Movant entered a guilty plea. (Doc. 7). During the plea hearing, Movant indicated, under oath, that:

> He was willing to, and wished to waive all of his rights in order to enter a guilty plea.
>
> As it related to his case and the charge against him, he told Mark Kadish everything he should know about the case as it related to Movant.
>
> He understood the nature of the charge to which he was pleading guilty.
>
> There were no threats of violence or any other form of coercion against him or any member of his family which compelled or persuaded him to enter his guilty plea.

_____

[6] In fact, the undersigned told Movant that if at any time he wished to change his plea to not guilty, he could come back to the undersigned and his case would be assigned to the next judge on the rotation based on the Court's procedures for criminal cases proceeding to trial. (Doc. 254 at 4).

[7] Attachment A contains a seven-page summary of losses sustained by several banks in connection with a total of nineteen loans based on Movant's fraudulent activities.

No one made any promises of leniency or a particular sentence or any other inducement of any kind in order to get him to plead guilty.

No one told him what sentence the court would actually impose.

He understood that he was waiving his right to appeal unless the court upwardly departed from the applicable guideline range or if the Government appealed.

His plea of guilty was entirely free and voluntary, that is, of his own free will.

He was not pleading guilty because someone had forced him to plead guilty or because Mark Kadish had talked him into pleading guilty contrary to his wishes.

He was entering a guilty plea because he did, in fact, commit the offense outlined in the Information.

He was not advised by anyone, including his lawyer, not to tell the complete truth to the Court.

He had sufficient time to discuss the case with his attorney before deciding to enter his guilty plea and was satisfied with Mark Kadish's representation.

He was in substantial agreement with the facts stated by the Assistant United States Attorney as to his role in the offense.

(*See* Doc. 28 at 3-22).

Following the plea hearing, Movant and Kadish had differences in opinion as to what objections to file to the presentence report ("PSR"). (Doc. 259, Attach.

14

12, ¶ 7).  As such, in addition to Kadish's objections, Movant also prepared his own objections which Kadish forwarded to the probation officer so that they could be incorporated into the formal objections.  (*Id.* at ¶ 7).  The cover letter to the probation officer was prepared by Movant with no help from Kadish.  (*Id.*).  In that cover letter, Movant indicates that Morochnik and his wife purchased seven properties from Movant and Movant's ex-wife "at a price very near the combined total of the outstanding loan balances" in order for Movant to liquidate his assets and pay off those mortgages.  (*Id.* at ¶ 5, Cumulative Exhibit A, at 23).  It was only upon reading that cover letter that Kadish first became aware of any real estate transfer from Movant to Morochnik, and at no time before or after did Movant ever challenge the legality of those transactions.  (*Id.* at ¶¶ 5, 8).

Movant also stated in the cover letter that, "I am very sorry for my actions and am doing my best to correct them.  I am prepared to accept responsibility for my actions because I am in fact guilty. . . ."  (Doc. 259, Attach. 12, Cumulative Ex. A; Doc. 518, Govt. Ex. G-2 at 1).  Additionally, prior to setting forth his objections, Movant provided a summary of the case, which he prefaced with the following paragraph:

> The following summary provides background information and details
> to assist in fully understanding the events listed in the charges to

15

which I have voluntarily pled guilty. I am guilty and am very sorry for my poor judgment in these matters. These bad decisions will haunt my kids, my family and myself for the rest of my life. I was raised in a family that is both religious and has predominantly served the public. For this reason, I am even more embarrassed and ashamed of myself for having followed this extremely bad advice. My true hope is that by providing this summary, I will be able to assist the government with their [sic] case against others that are as culpable as myself[.] . . .

(Doc. 259, Attach. 12, Cumulative Ex. A; Doc. 518, Govt. Ex. G-2 at 2). In the summary of the facts prepared by Movant, Movant never mentioned any of the facts relating to the conspiracy he now claims to be the real truth. (*See id.*). At sentencing, Movant again apologized – to his friends, family and his country for his involvement in the fraudulent scheme. (Doc. 24 at 41).

Mark Kadish "categorically state[s]" that at no time during his representation of Movant did he ever discuss Movant's guilty plea and/or sentencing with Judge Baverman, Paul Morochnik, Elida Baverman, or Lynn Fant. (*Id.* at ¶ 4). Kadish never directed Movant to withhold any information concerning the alleged real estate dealings with Paul Morochnik, Judge Baverman or Elida Baverman from the FBI or any other United States Agency. (*Id.* at ¶ 8).

Although Kadish has known Judge Cooper since the 1970's, every case Kadish has ever litigated before Judge Cooper has been conducted at arms length.

16

(*Id.* at ¶ 11).   Kadish never told Movant that he had a special relationship with Judge Cooper, and never asked or received any special favors from Judge Cooper. (*Id.*).   Mark Kadish has no connections with organized crime, and any such claim is "false and a figment of [Movant's] imagination." (*Id.* at ¶ 12).   Finally, Kadish has "never threatened [Movant] in any way before, during or after [his] representation of [Movant]." (*Id.*).[8]

One of the duties of a magistrate judge in this district is to appoint appellate counsel for indigent defendants.   (*Id.* at ¶ 9).   Judge Cooper's request for appointment of appellate counsel for Movant was referred to Judge Baverman since Movant's case was initiated as a guilty plea and thus no magistrate judge previously had been assigned to handle pretrial matters, and because Judge Baverman was the magistrate judge on criminal duty when the matter was referred. (Doc. 259, Attach. 13, ¶ 10).   As a result of Judge Cooper's request, Judge

_____

[8] The undersigned notes that in opposition to Movant's request for bond on appeal, the Government called Mark Kadish as a witness because Movant apparently had begun to send Kadish threatening letters raising the allegations he raises herein. (*See generally* Doc. 120).   During that hearing, Kadish testified that Movant is "a liar," and that Movant's allegations of criminal conspiracy between Kadish and Judge Baverman are "preposterous, they're false, they are outright lies," and are "made up." (Doc. 120 at 76-78).   Importantly, Judge Cooper weighed Mark Kadish's credibility against Movant's and found Kadish's testimony to be more credible. (Doc. 154).

AO 72A
(Rev.8/82)

Baverman appointed Lynn Fant to represent Movant because she is capable, diligent, and talented and was one of the few CJA panel lawyers of whom Judge Baverman was aware that sought out and gladly accepted appellate case appointments. (*Id.* at ¶ 13). Judge Baverman had no knowledge of the specifics of Movant's case. (*Id.*). The appointment of Ms. Fant was the only official act Judge Baverman undertook in Movant's case, and Judge Baverman had no other contact with Judge Cooper, his chambers, or Ms. Fant with regard thereto. (*Id.* at ¶¶ 14-16).

Judge Baverman never told Movant, nor directed any other person to tell Movant, to withhold information from any United States agency or court; nor did he threaten Movant or direct any other person to threaten Movant, in any way in relation to the sale of certain real estate properties to Paul Morochnik and his wife. (*Id.* at ¶¶ 17-18). Judge Baverman had no personal, contemporaneous knowledge of Paul Morochnik's purchase of seven properties from Movant, other than that his wife, Elida Baverman, was not the listing agent in any of those transactions. (*Id.* at ¶ 19). Because Judge Baverman was not aware of any of these transactions or any extortionate act in reference to these properties, there was no attempt to "cover up" these transactions. (*Id.*). Finally, Judge Baverman had no involvement in any

real estate transactions with Movant and did not receive $1,000,000.00 of real and/or personal property from Movant or his ex-wife for Judge Baverman's own or someone else's personal gain. (*Id.* at 22).

Judge Baverman's wife, Elida Baverman, swears by affidavit that she was not the listing or selling agent when Paul Morochnik and his wife purchased the seven properties from Movant and Movant's ex-wife, and she did not receive any profit, money, or tangible or intangible benefit from that purchase. (Doc. 259, Attach. 14 at ¶¶ 2-3).[9] Nor was Mrs. Baverman aware of any illegal or unethical conduct that occurred with regard to that purchase. (*Id.* at ¶ 7). Finally, Mrs. Baverman was not aware of any transfer of $1,000,000.00 worth of real estate from Movant and his ex-wife to Paul Morochnik and Morochnik's wife. (*Id.* at ¶ 8).

FBI Special Agent Jennifer Towns attests that in the spring of 2005 – nearly four years after the FBI's initial investigation of Movant's fraudulent scheme – the United States Attorney forwarded to her correspondence from Movant in which Movant accused Paul Morochnik and Judge Baverman of engaging in the same alleged criminal or ethical misconduct he claims here. (*Id.* at ¶ 3). S.A. Towns

---

[9] Mrs. Baverman apparently was involved in subsequent sales of some of those properties, but only received the typical 2.5% commission on those subsequent sales. (Doc. 259, Attach. 14 at ¶ 5).

and another FBI agent interviewed Movant regarding these accusations, and during the interview Movant was unable to provide any information that would corroborate his allegations. (*Id.* at ¶ 4). As such, the FBI did not pursue the matter any further. (*Id.*).

Movant also filed a grievance against Kadish with the State Bar of Georgia in which he raised these same allegations of conspiracy and misconduct. (Doc. 261). After reviewing Movant's complaint and interviewing Kadish – who told the State Bar investigator that Movant's claims were outright lies [*See* Doc. 120 at 77] – the State Bar apparently believed Kadish. (*See* Doc. 261).

B.    Movant's Plea was Knowing and Voluntary.

The Government first argues that Movant's claims should not be entertained by this Court because Movant waived the right to appeal or collaterally attack his sentences under the negotiated plea agreement. An appellate waiver, however, does not bar claims for ineffective assistance of counsel relating to the plea agreement or the waiver, or claims challenging the voluntariness of the plea. *See Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007); *Williams v. United States*, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005). Movant's claims that: (1) Mark Kadish had a conflict of interest with Judge Baverman and others such that Movant

20

was coerced into entering his plea; (2) Kadish told Movant that he ultimately would receive a sentence of zero to six months; and (3) Kadish told Movant that he only would answer to one loan in his name and not any other charges or losses, all relate to whether Movant voluntarily entered his plea.[10] Accordingly, before turning to the issue of whether the appellate waiver bars Movant's remaining grounds for relief, the undersigned must first analyze these ineffective assistance of counsel claims to determine whether Movant freely and voluntarily entered his guilty plea. The short answer is a resounding yes.

There is a strong presumption that statements made during the plea colloquy are true. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Anderson*, 384 F. App'x 863, 865 (11th Cir. 2010) ("There is a strong presumption that statements made during a plea colloquy are true."); *accord, United States v. Munguia-Ramirez*, 267 F. App'x 894, 897 (11th Cir. 2008)*; Patel*, 252 F. App'x at 974. Where a movant's claim of ineffective assistance of counsel is in direct conflict with his statements under oath, he has a strong burden to show that his

_____

[10] Although the second and third issues are not explicitly set forth in the original § 2255 motion, Movant raised them during the hearing as part of his argument that he did not enter into his guilty plea freely and voluntarily.

21

statements under oath were false. *Patel*, 252 F. App'x at 974-75. Movant's current attempt to disavow his previous sworn testimony at the plea hearing by creating some vast conspiracy amongst several highly regarded individuals against him does not meet this burden.

Movant's testimony during the evidentiary hearing was simply not credible. His answers were evasive, argumentative, and unresponsive, and he would not answer questions directly but instead would release a monologue of allegations that were unresponsive to the question asked. Additionally, Movant blatantly lied when he denied that the signature on the waiver of indictment form was, in fact, his signature. (Doc. 502, at 93). The record reflects that he signed the form before his counsel, the Assistant United States Attorney, and the undersigned, and he acknowledged at that hearing that the signature was his. (Docs. 3, 254 at 3-5). In addition, while the undersigned is no handwriting expert, Movant's signature is distinctive. A comparison of the signature on the waiver of indictment form [Govt. Ex. G-1] and his signature on the plea agreement [Doc. 8] would lead any person to the conclusion that the signatures are identical and that Movant's denial of his signature was an outright lie.

Further, while Movant claimed that Paul Morochnik and Judge Baverman were involved in shady real estate deals, he never identified a single deal to which he referred nor provided any motive that would cause Morochnik or Judge Baverman to want to "silence" Movant. Moreover, during his testimony, Movant continually repeated vague and convoluted allegations of threats, organized crime, and conspiracy, but Movant was unable to corroborate any of these allegations. In fact, when pressed by this Court, the only "connection" to organized crime he could come up with was a vague "involvement" with the Gambino family through the Gold Club trial in this Court – where Judge Baverman may have represented one of the minor defendants in that case prior to indictment and prior to his becoming a magistrate judge, and which neither Mark Kadish nor Paul Morochnik appear to have had any involvement whatsoever. *See generally United States v. Kaplan*, Criminal Action No. 1:99-CR-609-WBH-CCH.

Finally, Movant's claim that Judge Cooper influenced his decision to enter a guilty plea [Doc. 502, at 100-110] is entirely fabricated, as Movant came before the undersigned on March 6, 2003, requesting to plead guilty and waive indictment prior to Judge Cooper ever having been assigned to the case. (Doc. 254, at 3-5). Movant entered his guilty plea only six days later on March 12, 2003, and has

23

provided no testimony as to how Judge Cooper could have influenced Movant's decision during that six day period.

In short, Movant's highly improbable claims that his plea was coerced simply do not meet his burden of rebutting the strong presumption that his statements during the plea colloquy were true. Thus, the undersigned does not credit any of Movant's self-serving and unconvincing testimony during the evidentiary hearing. *See Abdul-Aziz v. United States*, No. CIV A 1:05CV86, CRIM A 1:03CR39, 2008 WL 4238943, at *6 (N.D. W. Va. Sept. 12, 2008) ("Simply because [the movant] now says the agreement existed, does not make it so, particularly in light of the testimony [the movant] gave under oath at his plea hearing . . . ."); *United States v. Miller*, 3 F. Supp. 2d 376, 382 (W.D. N.Y. 1998) ("[The movant's] belated assertion that he was unaware of the significance [of] his prior admission is insufficient to overcome the 'strong presumption of veracity' that is accorded to his sworn statement at the Rule 11 proceeding.") (citations omitted); *Paulino v. United States*, 964 F. Supp. 119, 125 n.2 (S.D. N.Y. 1997) ("The Court must credit [the movant's] sworn plea allocution over his self-serving habeas affidavit.").

AO 72A
(Rev.8/82)

In addition, as requested by Movant [Doc. 502, at 10-11, 116], the Court reviewed the affidavits he submitted in search of evidence to corroborate his tale. Those affidavits consist primarily of hearsay and do not come close to rebutting the presumption that all of Movant's previous proclamations of guilt – sworn under oath and otherwise – were true.

On the other hand, the affidavits submitted by the Government and the record evidence directly support this Court's view that Movant's previous sworn testimony during the plea hearing was true and that his testimony at the evidentiary hearing was completely fabricated.[11] Importantly, from the time that Movant was

---

[11] As noted, Movant requested the Court to consider his affidavits and the Government has likewise presented affidavits as well as testimony given in related proceedings. Movant has not objected to this evidence. While the Eleventh Circuit has held that a district court ordinarily should not resolve a disputed factual issue in a habeas proceeding based solely on affidavits, *Alvarez-Sanchez v. United States*, 350 F. App'x 421, 423 (11th Cir. 2009), where the affidavits are supported by other evidence in the record, the court may rely on them. *Id.*; *Owens v. United States*, 551 F.2d 1053, 1054 (5th Cir. 1977). Here, because the Government's affidavits are corroborated by Movant's sworn statements when he pled guilty and because Movant's testimony in his habeas proceeding was not credible, the undersigned may consider the Government's affidavits in recommending that the instant § 2255 motion be denied. *Compare Alvarez-Sanchez*, 350 F. App'x at 424 (stating that a district court is not required to hold an evidentiary hearing where the movant's claims are "clearly contradicted by the record or are patently frivolous"); *James v. Smith*, 465 F.2d 379, 380 (5th Cir. 1972) (holding district court did not err in failing to conduct an evidentiary hearing with regard to movant's claim that he did not voluntarily enter into his guilty plea, where the government provided

25

first interviewed by the FBI in 2001 until December of 2004 – a time period of over three years – Movant maintained his guilt and remorse. And, Mark Kadish's testimony that Movant maintained his guilt throughout his representation of Movant is consistent with Movant's record admissions of guilt when he waived his right to indictment and indicated his intent to plead guilty before the undersigned, during his plea and sentencing hearings before Judge Cooper, and in his freely-provided admissions in connection with his objections to the PSR.

The undersigned further finds that the timing of Movant's revelations as to the conspiracy to force him to plead guilty undercuts his credibility. It was not until Movant had spent seven months in the federal penitentiary that he first mentioned the imagined ever-expanding conspiracy against him that coerced his guilty plea. Moreover, since that time in his interview with the FBI with regard to the alleged conspiracy and before the Court, Movant has been unable to provide any information whatsoever to corroborate his allegations. Based on this Court's view that Movant has fabricated his claims of conspiracy, organized crime, and coercion in a desperate attempt to be relieved from the guilty plea that he entered

---

affidavit evidence that directly contradicted the movant's claims and were corroborated by the guilty plea transcript).

into knowingly and voluntarily, Movant's claim that Mark Kadish had a conflict of interest, was ineffective, and coerced Movant into entering his plea is without merit.

Movant's claims that Mark Kadish told him that he would be sentenced to zero to six months imprisonment also is belied by Movant's previous sworn testimony at the plea hearing that no one made any promises of a particular sentence and that no one told him what sentence the court would actually impose. Even if the undersigned believed that Mark Kadish advised Movant that he would receive any such sentence – which the undersigned does not – an erroneous sentence estimate by counsel does not render a plea involuntary. *United States v. Himick*, 139 F. App'x 227, 228-29 (11th Cir. 2005); *United States v. Orr*, 165 F. App'x 623, 624-25 (10th Cir. 2006); *United States v. Tealer*, No. 01-51262, 2002 WL 31415154, at *1 (5th Cir. Oct. 9, 2002); *United States ex rel. LaFay v. Fritz*, 455 F.2d 297, 302 (2d Cir. 1972). As such, this claim also fails.

Finally, with regard to Movant's claim that he was unaware that he would be responsible for restitution to more than one bank, Movant's testimony at the evidentiary hearing that he never received a complete copy of the plea agreement prior to entering his plea was not credible. Significantly, the record demonstrates

AO 72A
(Rev.8/82)

that Movant signed a statement and testified under oath that he had, in fact, read the plea agreement in its entirety with his attorney – which included Attachment A (the list of losses from the financial institutions to which Movant agreed to pay restitution) – as well as a paragraph stating that Movant agreed that he will pay restitution to all of the victim banks identified in that attachment. (*See* Doc. 8 at 3 (¶ 9), 7).[12] Moreover, during the plea colloquy, Judge Cooper read the entire count to Movant – which count explicitly included defrauding several banks – and Movant indicated that he understood the charges. (Doc. 28 at 9-10). Movant's contrary claim here that he only thought he would be entering a plea to one loan, therefore, also fails. *See United States v. Berry*, 50 F. App'x 251, 252-53 (6th Cir. 2002) (rejecting movant's claim that her plea was involuntary because she was unaware of the exact amount of restitution to be imposed, where the plea agreement and the judge explained the amount and concept of the restitution order to be imposed); *see also United States v. McCarty*, 99 F.3d 383, 386 (11th Cir. 1996) (finding harmless error the district court's failure to discuss restitution during the plea colloquy because the defendant was fully aware of what his plea

---

[12] One merely needs only to look at Movant's objections to the PSR to find that Movant realized that those losses would be included as part of the plea agreement. (*See* PSR, Objections ¶ 37).

28

connoted and its consequences based on the plea agreement); *compare Miller*, 3 F. Supp. 2d at 382 (holding movant's affidavit which claimed that he was unaware of the significance of the amount of drugs did not overcome his admission to that amount of drugs at the plea hearing because whether he was aware of the significance of the amount of drugs "he clearly had every opportunity to state at the plea colloquy that he did not agree with the plea agreement in that respect, but instead he stated under oath that the agreement was factually correct.").

As such, based on the totality of the evidence, Movant has failed to demonstrate that Mark Kadish provided ineffective assistance of counsel in any of the ways alleged by Movant, and the undersigned finds that Movant knowingly and voluntarily entered into his guilty plea. The record also makes clear that Movant understood that, as part of the plea agreement, he entered into a valid and enforceable appellate waiver which precludes both direct and collateral review of both his conviction and sentence. *See United States v. Steele*, 168 F. App'x 897, 900 (11th Cir. 2006) (finding appellate waiver valid where the court specifically questioned the movant about the waiver provision); *United States v. Montes*, 151 F. App'x 846, 853 (11th Cir. 2005) (finding appellate waiver valid where judge reviewed the waiver with the movant and he agreed that he was freely and

AO 72A
(Rev.8/82)

voluntarily waiving his right to appeal his sentence); *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005) (finding appellate waiver enforceable where the court expressly questioned movant about the specifics of the waiver and determined that he had entered into the written plea agreement, which included the waiver, freely and voluntarily, and where "[t]he plain language of the agreement informed [Movant] that he was waiving a collateral attack on his sentence."); *United States v. Bushert*, 997 F2d 1343, 1350-51 (11th Cir. 1993) ("[O]ne of the keys to enforcing a sentence appeal waiver is that the defendant knew he had a 'right to appeal his sentence and that he was giving up that right.'") (citations omitted). *See also United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008) (stating that a waiver is valid if the Government shows that either: "(1) the district court specifically questioned the [movant] about the waiver; or (2) the record makes clear that the [movant] otherwise understood the full significance of the waiver.").

    C.    <u>Movant's Remaining Claims are Barred by the Waiver.</u>

Movant's remaining ineffective assistance claim against Mark Kadish – i.e., that Kadish provided ineffective assistance of counsel with regard to his failure to object to alleged inaccuracies in the PSR – is barred by the appellate waiver.

*See United States v. Tyler*, Nos. 5:07-cr17-DCB-JCS-1, 5:08cv206-DCB, 2009 WL 2169829, at *3 (S.D. Miss. July 20, 2009) (holding movant's argument that counsel was ineffective when he failed to object to the presentence report was barred by waiver of the right to collaterally attack his sentence); *Montgomery v. United States*, Nos. 06-cv-076-WDS, 04-cr-30139, 2006 WL 1050691, at *2 (S.D. Ill. April 20, 2006) (holding ineffective assistance of counsel claim for failing to object to factual statements in the presentence report were barred by the waiver); *United States v. Navarro*, Nos. CR-02-0068-F, CIV-05-0458-F, 2005 WL 1657068, at *3 (W.D. Okla. July 5, 2005) (holding claim of ineffective assistance of counsel for counsel's failure to object to enhancements in the presentence report relate to counsel's conduct after the plea was entered and therefore is barred by the waiver of collateral review rights).

Similarly, Movant's claims that: (1) he received ineffective assistance of appellate counsel because Lynn Fant had a conflict of interest as she was part of the alleged vast conspiracy with Judge Baverman and others to act adversely to Movant; (2) he received ineffective assistance of appellate counsel because Ms. Fant refused to correct "factual inaccuracies and defenses;" (3) he received ineffective assistance of appellate counsel because Ms. Fant filed an *Anders* brief

on appeal; (4) he did not receive his Fifth and Sixth Amendment rights to due process, grand jury indictment, and notice for offenses not charged, and the Government did not prove jurisdictionally required elements with regard to the charged offenses, and (5) he did not receive his rights under *Booker* because he was sentenced under the mandatory sentencing guidelines for uncharged facts and substantive offenses not admitted*, also do not concern matters that have any bearing on the validity of the plea agreement or appellate waiver; therefore, Movant also is prohibited by the waiver from raising these claims in the instant § 2255 motion.[13] *See Patel*, 252 F. App'x 970 at 975; *Williams*, 396 F.3d at 1342 n.2.[14]

        D.    <u>Movant's Claims for Ineffective Assistance of Appellate Counsel for Filing an *Anders* Brief and under *Booker* Also are Barred By the Law-of-the-Case Doctrine.</u>

Finally, Movant's claims that Ms. Fant rendered ineffective assistance of appellate counsel when she filed her *Anders* brief and that his rights under *Booker*

---

[13] As discussed hereafter in Section III.D, the Eleventh Circuit already has concluded that Movant's "valid and enforceable" appellate waiver prohibits him from raising his *Booker* claim.

[14] Moreover, as discussed previously herein, Movant knowingly and voluntarily waived his right to be charged by indictment; therefore, his claim that his due process rights were violated because he was not indicted is entirely frivolous.

were violated are also both barred by the law-of-the-case doctrine. Indeed, the Eleventh Circuit confirmed that its "independent review of the entire record reveals that counsel's assessment of the relative merit of the appeal is correct" –i.e., "no arguable issues of merit," and granted Fant's *Anders* motion to withdraw. (Doc. 259, Attach. 1, at 23). The Eleventh Circuit also has found in this case that: (1) Movant's "valid and enforceable" appellate waiver "is broad enough to include the *Booker* issue and, consequently, to bar [Movant] from [raising the issue];" and (2) "even if the *Booker* issue was not waived . . . [Movant] failed . . . to establish constitutional or statutory *Booker* error." (Doc. 259, Attach. 1, at 27, 30). Both of these issues, therefore, have been decided adversely to Movant by the Eleventh Circuit and cannot be relitigated here. *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000).[15]

---

[15] Movant has not demonstrated that any of the three exceptions to the law-of-the-case doctrine apply. *See Harris v. Corrections Corp. of America*, 433 F. App'x 824, 825 (11th Cir. 2011) (stating that a court is prohibited from reviewing an issue previously litigated in a case unless one of the following exceptions exist: (1) a subsequent trial produced substantially different evidence; (2) controlling authority has since made a contrary decision of law applicable to the issue; or (3) the prior decision was clearly erroneous and would work manifest injustice) (quoting *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996)).

33

III.    Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that

Movant Scott Hintz's motion to vacate sentence [Doc. 253] be **DENIED**.

**IT IS ORDERED** that the Government's motion for leave to supplement

the record [Doc. 261] is **GRANTED** *nunc pro tunc*.  The exhibit filed on June 17,

2008, is accepted as filed.

IV.    Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district

court must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant. . . . If the court issues a certificate, the court must state the

specific issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)."   28 U.S.C. § 2253(c)(2) provides that a certificate of appealability

("COA") may issue "only if the applicant has made a substantial showing of the

denial of a constitutional right."  In order for the certification requirement to fulfill

its function of weeding out frivolous appeals, a court should not automatically

issue a COA; rather, the applicant must prove "something more than the absence

of frivolity" or "the existence of mere 'good faith' on his or her part."  *Miller-El*

*v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

AO 72A
(Rev.8/82)

Movant need not prove, however, that some jurists would grant the § 2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion of Movant's claims, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant voluntarily entered a guilty plea, waived his appellate and collateral rights, and is prohibited from raising his claims in the instant § 2255 motion. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

AO 72A
(Rev.8/82)

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO ORDERED AND RECOMMENDED** this 5th day of January, 2012.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)